Christopher W. Hyde (8668)
    *Attorney at Law*
One Overlook Road
Newton, NJ 07860
(862) 324-0028
cwhydeesq@mac.com
Attorney for Deborah E. Kelly

                UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| In The Matter of: | : | Case No. 14-16190 |
| | : | |
| KEVIN D. KELLY, | : | Certification of |
| | : | **Deborah E. Kelly** In Support of Motions |
| | : | For Relief From Stay, Confirmation of |
| Debtor. | : | Power of Attorney and Authorization to Complete |
| | : | Sale, and for Fees and Costs |
| | : | |

DEBORAH E. KELLY, of full age, hereby certifies the following:

1. I am a named Creditor in the above-entitled action, am the estranged spouse of Debtor, and have personal knowledge of all facts set forth herein. I make this Certification in support of my motions for relief from the automatic stay provisions of the United States Bankruptcy Code, for a confirmation of my Power of Attorney and an authorization to sell certain jointly owned/mortgaged property, and for counsel fees and costs necessitated by Debtor's bad faith.

2. Debtor and I were married in September 1987. I was a stay-at-home parent while Debtor pursued a successful career as an attorney. Debtor and I separated in 2004. I remained in the former marital home with the children of the marriage and Debtor and I jointly acquired a townhouse located at 61 Carriage Lane, Newton, NJ ("townhouse,") for his residence. A <u>third</u> Complaint for divorce was filed in June, 2010. During the matrimonial proceedings, the former marital home was sold in 2012 but, despite numerous Court Orders requiring its listing and sale, Debtor remains in the jointly purchased townhouse, for which he has failed to make any payments against the mortgage since June, 2010.

3. Debtor and I have been litigants in three matrimonial actions venued in the Superior Court of New Jersey, beginning in 2004 at the time of our separation. The first two proceedings were filed and later dismissed. The third action, commenced by Debtor in June, 2010 proceeded for almost three years, and was plagued by the bad faith of Debtor, including his failure to engage in discovery, failure to abide by numerous Court Orders, and his unilateral cessation of support in violation of Court Orders. The Superior Court action (Docket No. FM-19-578-10) was ultimately dismissed by both parties as the result of a Consent Order dated March 25, 2013, a copy of which is attached hereto as **Exhibit 1**, (hereinafter, "the Consent Order."). The terms of the Consent Order specifically provided for the parties' submission to binding arbitration.

4. In addition to submission to arbitration, the Consent Order also provided for Debtor to continue to abide by the prior Orders of the Superior Court, including the payment of support; Debtor used the dismissal of the Superior Court action to cease the payment of support. Debtor also failed to pay the arbitrator's retainer for months, further delaying the proceeding. Notwithstanding numerous Orders requiring Debtor to provide discovery concerning his income, he has failed to provide any meaningful discovery. There are presently three outstanding Orders requiring Debtor to account for an alleged misuse of his Attorney Trust Account (IOLTA).

5. The Consent Order also provided that the parties were, within a specified time, to request any additional discovery which was outstanding. My matrimonial attorney timely requested that Debtor comply with the prior Orders requiring outstanding discovery. Debtor failed to make any discovery requests and also failed to respond to any discovery requests made by my attorney or as Ordered by the Superior Court.

6. Arbitration commenced in or about June 2013. Debtor, as Plaintiff, presented his direct case to the arbitrator and his cross-examination has been partially completed. During Debtor's direct and cross-examination the arbitrator challenged much of Debtor's presentation as well as his veracity. The arbitration adjourned with Debtor's cross-examination partially completed and did not proceed immediately because of scheduling issues. However, when the arbitrator sought additional payment, Debtor refused to make the required payment, yet twice expended the time and money to bring motions to the Superior Court to return the matter to the trial calendar. The Superior Court denied both motions. Please refer to **Exhibits 2 and 3.**

7. In a further attempt to delay the arbitration, Debtor sought to discharge his matrimonial attorney, which was denied by the arbitrator due to the fact that the arbitration was already in progress.(Please refer to **Exhibit 4**) Debtor again sought, by a second motion, to return the matter to the Superior Court. That motion was not filed by the Superior Court. Please refer to the attached letter of Judge Catherine Enright, **Exhibit 3**.

8. Debtor brought the same motion, (to return the case to the Superior Court,) before the arbitrator. The arbitrator denied Debtor's motion, gave Debtor a date certain on which to pay the required fees, and set an absolute date for the arbitration to proceed, which was April 1, 2014. Please refer to the letter and Orders of the Arbitrator, dated February 19, 2014, **Exhibit 4**

9. Debtor sought, once again, to delay the arbitration and was advised by the arbitrator that the matter would proceed on April 1, 2014 "with or without" Debtor's participation. Please refer to the correspondence from the arbitrator dated March 31, 2014, **Exhibit 5**.

10. The peremptory date posed a conflict for my attorney, who was scheduled for another matrimonial matter in the Superior Court of Morris. However, given the Court's understanding and experience with the chronic obstructions and delays by Debtor, Assignment Judge Weisenbeck interceded by adjourning my matrimonial attorney's trial to permit my attorney to participate in the arbitration and complete the matter.

11. In response to the arbitrator's advice that the matter would proceed on April 1, 2014, Debtor filed his bankruptcy petition, literally on the eve of the arbitration, and responded directly to the arbitrator by correspondence dated March 31, 2014, a copy of which is attached as **Exhibit 6**.

Debtor's matrimonial attorney's correspondence of March 31, 2014 appears to imply that he viewed the arbitrator's position in conflict with Debtor, based solely upon Debtor's filing of the Petition. Please refer to **Exhibit 7**. Notably, Debtor has listed the arbitrator's fee twice in his Petition; once to the law firm for which the arbitrator works and a second time for the arbitrator directly.

12. Debtor is an attorney who has used the court system, now including the bankruptcy system, to delay the completion of a matrimonial proceeding which, according to the succession of Superior Court judges presiding over the matter, should have taken less than one year to complete. In the almost four years since the most recent action was commenced, among other things, the Debtor violated Court Rules and Orders of the Court, while misrepresenting the value of assets, all of which allowed him to invade and convert the sole liquid marital asset (a $150,000.00 retirement account,) to his own use. He has routinely misrepresented his income in an effort to avoid the payment of support and has misrepresented his "expenses" to justify numerous failed attempts at reducing support. The Debtor has chosen, instead of paying the modest fees required by the arbitrator to complete the process, to instead pay a bankruptcy attorney and the filing fees for a bankruptcy case, literally within a day of what was to have been the final arbitration date.

13. Debtor has, throughout the matrimonial action, threatened the filing of a bankruptcy proceeding in the event that he was obligated to pay anything for equitable distribution or was subject to the enforcement of an interim award of unpaid pendente lite support of almost $70,000.00.

14. I appeared at the initial creditor's meeting on April 28, 2014 for two main reasons. First, I challenged whether I should in fact be listed as a creditor since the sole basis for that listing was Debtor's inclusion of an interim award of unpaid unallocated pendente lite support, which Debtor mischaracterized as "alimony." At the meeting, the Trustee advised Debtor and his counsel that the purported "alimony," (whether called pendente lite support or otherwise,) listed on the Petition was not dischargeable in bankruptcy and that, given the amendments to the Bankruptcy Code over the last decade, virtually any award made in a matrimonial proceeding would likewise be non-dischargeable.

15. The second reason why I appeared at the initial creditors' meeting was to seek to have the matrimonial action released from the automatic stay. I advised the Trustee that the filing of the Petition was timed specifically to avoid the completion of the matrimonial arbitration and, in so doing, was in bad faith. The bankruptcy Trustee asked Debtor whether he would consent to the matter being returned to arbitration and in response, Debtor indicated that he would not consent because he was seeking to have the matter returned to the Superior Court. I did advise the Trustee that Debtor's initial motion to the Superior Court had been denied, as had the same application made to the arbitrator, and that Debtor's second motion to the Superior Court had not been accepted for filing. The Trustee asked Debtor whether he would consent to lifting the stay if the matter would proceed in the Superior Court, to which the Debtor responded in the affirmative. The Trustee then advised Debtor that if a motion were made to return the matter to arbitration, it would likely be granted. He also advised me that I would need to make such a motion in the absence of consent and that I would need to hire bankruptcy counsel to do so.

16. Later on the same day, in an effort to avoid the cost and delay of engaging counsel and filing a motion, I hand-delivered a letter to Debtor's bankruptcy counsel and provided him with a Consent Order Lifting Stay, copies of which are attached hereto as **Exhibit 8.** I requested that counsel

advise me as to his position by Friday, May 2, 2014. In my letter, I advised counsel that I would be compelled to hire bankruptcy counsel and file this motion in the event that he did not respond affirmatively, and that I would seek such sanctions as might be available to me, given the statements of the Trustee at the Creditors' meeting. As of this date, I have received no communication in response.

17. As noted earlier, Debtor remains in possession of the jointly owned, jointly mortgaged townhouse in which he resides and for which he has refused to make any mortgage payments since June 2010. His failure to make such payments has destroyed my credit. The Superior Court directed the listing and sale of the townhouse in September of 2012. (Please refer to Order #2 of 2, with relevant portions of the Statement of Reasons, **Exhibit 8**.) The Superior Court, noting Debtor had objected to the sale of the townhouse due to his "living rent free," indicated that it would appoint me as Attorney in Fact in the absence of Debtor's cooperation. Ultimately, due to Debtor's continued obstruction of the sale, the Superior Court appointed me as Attorney in Fact to list and sell the townhouse. (Please refer to Order and Statement of Reasons, **Exhibit 9**.)

18. The value of the townhouse is presently less than $100,000.00 due in part to the decline in real estate values coupled with Debtor's failure to maintain the same. **Exhibit 10** is the list of "comparable sales" submitted to the mortgagee in connection with a proposed "short sale." Foreclosure proceedings have commenced. **Exhibit 11** contains portions of the Summons and Complaint filed by the mortgagee. Included within the Complaint is mortgagee's statement that the balance presently owed is $176,000.00. Because the value of the property is far less than the outstanding balance due on the mortgage loan, the mortgagee has indicated that it is willing to consider a short sale of the property and I have signed a contract with a purchaser ready, willing, and able to purchase the property. (Please refer to Contract of Sale, **Exhibit 12.**) However, the mortgagee cannot consider the offer in the absence of Debtor's cooperation, which he has refused to provide. I therefore seek this Court's ratification of the Power of Attorney granted by the Superior Court of New Jersey and this Court's authorization to permit me to effectuate the short sale of the townhouse. Doing so will dispose of a joint debt against an asset of significantly less value than the debt asserted. There is simply no equity in this asset.

19. Debtor and I knowingly, willingly, and with advice of counsel entered into a Consent Order dismissing the Superior Court action and submitted to binding arbitration. Both the Superior Court and the arbitration tribunal have already denied Debtor's motions to return the matter to the trial calendar of the Superior Court. Debtor's second motion was returned unfiled. It is clear that any further application by the Debtor to return the matter to the Superior Court will be denied. Given the current Bankruptcy Code, there is little to suggest that any decision, be it from the arbitration tribunal or the Superior Court, will have any impact upon Debtor's bankruptcy proceeding, since support is not dischargeable. The arbitrator and the Superior Court have evidenced a determination to see the matrimonial matter to a conclusion in arbitration.

20. My personal financial circumstances continue to rely upon Debtor and the Superior Court's award of ongoing support. My separate funds have been completely exhausted by the matrimonial action which has been perpetuated by the bad faith actions of Debtor. The support arrears amassed by Debtor since the June 2010 filing, of approximately $70,000.00 represents but a part of the destruction he has visited upon me, and his family. I have incurred over $150,000.00 in attorneys' fees to date, the vast majority of which was expended solely to enforce Orders which were ignored by Debtor. Debtor's most recent actions, first in filing the Petition on the eve of the final day of

1. arbitration, and then his refusal to consent to vacating the stay, are but the latest in an unending series of actions based in bad faith designed to delay the completion of the divorce and to exhaust my limited resources. To now be forced to engage counsel in order to file this motion, given the Trustee's clear indication that the same would be granted, warrants the Court's award of counsel fees, together with such other sanctions as the Court deems appropriate.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 5/9/14

_____
Deborah E. Kelly